**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **ANGELO IAFRATE CONSTRUCTION, L.L.C.** | **PLAINTIFF** |
| **V.** | **1:03CV187LG-RHW** |
| **BOND PAVING CO., INC. AND** <br> **R.L.I. INSURANCE CO.** | **DEFENDANTS** |
| **BOND PAVING CO., INC.** | **COUNTER-CLAIMANT** |
| **V.** | |
| **ANGELO IAFRATE CONSTRUCTION, L.L.C.** <br> **AND CONTINENTAL INSURANCE CO.** | **COUNTER-DEFENDANTS** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON ISSUES
TRIED WITHOUT A JURY PURSUANT TO FED. R. CIV. P. 52**

THIS CAUSE came before the Court on October 12 and 13, 2005, for a trial without a jury. The Plaintiff, Angelo Iafrate Construction, L.L.C., seeks damages for breach of contract from the Defendants, Bond Paving Co., Inc., and R.L.I. Insurance Company. Defendant Bond Paving filed a counterclaim against the Plaintiff, Iafrate, and its surety, Continental Insurance Company, seeking damages for breach of contract. Having considered the testimony, evidence, and the parties' proposed findings of fact and conclusions of law, the undersigned is of the opinion that the Plaintiff has established that Defendant Bond Paving breached the contract. Therefore, the Plaintiff is entitled to recover from Defendants damages in the amount of $33,745.66, plus a penalty pursuant to MISS. CODE ANN. § 31-5-27, in the amount of $5,061.85, and attorney fees pursuant to MISS. CODE ANN. § 31-5-57. Defendant Bond Paving has failed to establish its claims against the Counter-Defendants; therefore, the Defendant's claims must be dismissed with prejudice.

PROCEDURAL HISTORY

Defendant Bond Paving Co., Inc., is a Mississippi corporation engaged in the business of asphalt paving on highway projects. Bond Paving's surety is Defendant R.L.I. Insurance Company, which is an Illinois corporation. The Plaintiff, James Construction Group, LLC, f/k/a Angelo Iafrate Construction, L.L.C., is a Florida limited liability company with a principal place of business in Baton Rouge, Louisiana. Iafrate's surety is Counter-Defendant Continental Insurance Company.

Iafrate filed its complaint against Bond Paving and R.L.I. for breach of contract on February 25, 2003. Iafrate filed an amended complaint and then a second amended complaint on June 20, 2003. In its complaint, Iafrate contends that it is entitled to $144,072.91, plus interest, for the breach by Bond Paving. In addition, Iafrate contends that it is entitled to penalties pursuant to MISS. CODE ANN. § 31-5-27, interest, and attorney's fees pursuant to MISS. CODE ANN. § 31-5-57. Iafrate also seeks punitive damages for Bond Paving's alleged bad faith breach of contract and wrongful termination.

Bond Paving filed a counterclaim against Iafrate and Continental seeking damages for breach of contract. According to Bond Paving, Iafrate breached the contract by failing to complete the project. Bond Paving ultimately hired another subcontractor to complete the project at a cost of $78,678.89 above the contract price with Iafrate. In addition to these damages, Bond Paving also seeks attorneys' fees, expenses, prejudgment and post-judgment interest, and punitive damages for Iafrate's and Continental's bad faith breach of contract.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

On July 31, 2001, Bond Paving, as the prime contractor, entered into a contract with the Mississippi Department of Transportation for the reconstruction of Highway 90 in Hancock County between Highway 607 and Waveland Avenue, State Project No. GAI-0003-01-097-10174. On

2

August 31, 2001, Iafrate and Bond Paving entered into a subcontract for the grinding work required on the project. Iafrate agreed to grind the pavement for $9.85 per square yard. The contract provided as follows:

> Unless herein otherwise specifically provided, the Subcontractor shall commence work promptly or upon notice from the Contractor. . . .

(Pl.'s Ex. P-1, p. 1.) Exhibit D to the subcontract provided that the work on the project would "be performed as scheduled by the prime contractor, but not prior to delivery of subcontractor's equipment from equipment dealer," which was anticipated to be four months from the date the equipment was ordered. (Pl.'s Ex. P-1, Ex. D.) The subcontract required the contractor to pay the subcontractor within "ten (10) days from the time that the Contractor is paid by [MDOT]." (Pl's Ex. P-1, p. 2.) The subcontract also provided as follows:

> The Subcontractor shall, in any event, prosecute the work diligently and so as to avoid delaying the progress of the Contractor or other subcontractors on other portions of the project work. The subcontractor shall keep and maintain on the project a sufficient number of properly qualified workmen and sufficient quantity materials, equipment and supplies to efficiently perform the work as required without delay. Should the Subcontractor cause delay in the progress or completion of the project, Contractor may recover from Subcontractor the damages resulting therefrom, including liquidated damages assessed by the Owner and attributable thereto.

(Pl.'s Ex. P-1, p. 1.) The subcontract further provided as follows:

> Should the Subcontractor at any time fail to perform any one or more of the agreements herein Contained, (sic) . . . or abandon the work, any such failure or abandonment shall amount to a default hereunder and the Contractor may at the Contractor's option, After (sic) 24 hours notice to the Subcontractor, provide the labor, materials equipment and supplies and other Items (sic) necessary to perform the work and discharge the other obligations assumed by the Subcontractor and Recover (sic) the cost thereof from the Subcontractor, and may deduct such cost from any money then due or thereafter due under this subcontract . . ., or the Contractor, at the Contractor's option, may terminate the Subcontractor and take over the work and complete the same Or (sic) re-let the subcontract, deducting in any case the cost thereof . . . from the payments that would otherwise be due hereunder.

(Pl.'s Ex. P-1, p. 3.)

3

Iafrate began its work on the project on February 22, 2002. As of March 22, 2002, Iafrate had completed 6,636.58 square yards of diamond grinding. MDOT paid Bond Paving for the work completed by Iafrate on April 11, 2002. By this time, it was apparent that Iafrate was experiencing difficulty grinding the eastbound lanes. Iafrate left the jobsite on April 18, 2002. As required by the subcontract, Bond Paving's payment to Iafrate was due on or before April 21, 2002. Bond Paving, however, did not pay Iafrate by April 21, 2002. According to Bond Paving, it did not pay Iafrate when payment was due because Iafrate did not provide Bond Paving a plan concerning completion of the project. Iafrate returned to the jobsite on May 6, 2002, and worked through May 8, 2002. On May 20, 2002, Bond Paving certified to MDOT that it had paid Iafrate for the work.

Between March 23, 2002, and April 24, 2002, Iafrate completed 8,923.73 square yards of diamond grinding. MDOT paid Bond Paving for the work performed by Iafrate on May 20, 2002. The contract required payment to be made to Iafrate by May 30, 2002. Bond Paving, however, did not pay Iafrate by that date because, according to Bond Paving, Iafrate still had not provided any assurances to Bond Paving about completing the project. On June 20, 2002, Bond Paving certified to MDOT that it had paid Iafrate for this work, even though Bond Paving had not actually paid Iafrate.

On May 30, 2002, Iafrate obtained a performance bond for the project, which Iafrate subsequently provided to Bond Paving. Iafrate returned to the jobsite on June 5 and 6, 2002. Because of the difficulty Iafrate was experiencing grinding the eastbound lanes, Kevin McGlinchey, an employee of Iafrate, met with a representative of the blade manufacturer, and a representative of the machine manufacturer on June 5 or 6, 2002, to determine the cause of the problem. During the meeting, the group discussed changing the heads on the machine or simply subcontracting the work. McGlinchey ultimately made the decision to subcontract the work. McGlinchey advised Jeff

Bassett, an employee of Bond Paving, of Iafrate's intention to subcontract the work. By letter dated June 6, 2002, Bassett confirmed his conversation with McGlinchey regarding Iafrate's intention to subcontract the remainder of the work.

By September 12, 2002, Bond Paving had not paid Iafrate for its work on the project, and Iafrate had neither completed the project nor hired a subcontractor to complete the project. By letter dated September 12, 2002, Iafrate notified Bond Paving that Bond Paving had breached the subcontract by failing to make payments to Iafrate. Iafrate also advised Bond Paving that it would not "proceed with the remainder of the contract." (Def.'s Ex. 14). Bond Paving responded on September 13, 2002, that in past conversations with Iafrate, Bond Paving had advised that it would pay Iafrate upon Iafrate's return to the project. (Def.'s Ex. 15). Bond Paving also suggested that the breach, if any, had been committed by Iafrate. (Def.'s Ex. 15). Iafrate responded that to return to the jobsite to complete the project, it would require additional costs for a remobilization. Iafrate also demanded payment for work already performed. (Def.'s Ex. 17). By letter dated October 11, 2002, Bond Paving informed Iafrate that it was in default, and that Iafrate had 24 hours to correct the default. Iafrate did not correct the default, so on October 15, 2002, Bond Paving terminated the contract. On December 16, 2002, Bond Paving hired another subcontractor, Highway Services, to complete the work at a cost of $11.50 per square yard. Bond Paving was also required to pay Highway Services a $50,000 mobilization fee.

BREACH OF CONTRACT CLAIMS:

Iafrate and Bond Paving have asserted claims of breach of contract against each other and their respective sureties. Under Mississippi law, "[t]he elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily." *Favre Prop. Mgmt., LLC v. Cinque Bambini,* 863 So.2d 1037, 1044 (Miss. Ct. App. 2004), *citing Warwick v. Matheney,* 603 So.2d 330, 336 (Miss.1992). The parties do not dispute the existence of a valid and binding contract. Therefore, the Court must first determine whether the subcontract was breached, and by which party.

*Was the Subcontract breached, and if so, by whom?*

Iafrate contends that Bond Paving breached the contract on April 21, 2002, and on May 30, 2002, by failing to make payments to Iafrate in accordance with the terms of the contract. Bond Paving defends its failure to make payments to Iafrate by claiming that Iafrate was in default on April 18, 2002, three days before the first payment was due. Under Mississippi law, "[a]s a general rule, a party to a contract may break it by renouncing his liabilities under it; by rendering performance impossible; or by totally or partially failing to perform his agreement or undertaking." *Matheney v. McClain*, 161 So.2d 516, 519 (Miss. 1964). "When either party to a contract fails to perform any of his terms, the contract has been broken." *Matheney*, 161 So.2d at 519-20 (citation omitted). "[A] party's material breach of a bilateral contract excuses further performance by the other party." *Cinque Bambini*, 863 So.2d at 1044, *citing Gulf South Capital Corp. v. Brown,* 183 So.2d 802, 804-05 (Miss.1966). Mississippi law is well established that termination of a contract is an "extreme remedy" and will only be allowed for a material breach. "A breach is material when there ' is a failure to perform a substantial part of the contract or one or more of its essential terms

or conditions, or if there is such a breach as substantially defeats its purpose,' or when 'the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract.'" *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So.2d 746, 756 (Miss. 1987).  "The issue of whether a breach was material is a question of fact." *Cinque Bambini*, at 1044, *citing UHS-Qualicare, Inc.,* 525 So.2d at 756 (Miss.1987).

     The subcontract states that Bond Paving "agrees to pay [Iafrate] the stated consideration for said work on the basis of the quantities allowed and paid for by the Owner, and to make payment with (sic) ten (10) days from the time that the Contractor is paid by the Owner, less the [retainage]." (Pl.'s Ex. 1, ¶ 5.)   Under this provision, Bond Paving is required to make payment to Iafrate within ten days of payment by MDOT for work performed by Iafrate.  Bond Paving contends that when the first payment was due, Iafrate was already in default for leaving the jobsite on April 18, 2002.  In other words, Bond Paving contends that Iafrate abandoned the project on April 18, 2002, and was therefore in breach.  Because Iafrate was in breach, Bond Paving contends that its performance, which was paying Iafrate for its work, was excused.  Bond Paving offered the testimony of Jeff Bassett in support of this contention. Jeff Bassett, who was employed with Bond Paving from July 1999 until September 2005, testified that David Bolin, an employee of Iafrate, told him on April 18, 2002, that he, Bolin, did not know when he was coming back to the jobsite.  On that date, Bolin loaded the machine onto his truck and left the jobsite.  Iafrate was clearly experiencing difficulty with the continuous grinding required on the eastbound lanes.  Bond Paving concluded that Iafrate had abandoned the project based upon Iafrate's grinding difficulties, Bolin's comment to Bassett, and Bolin's conduct in leaving the jobsite with the machine.  However, Bolin never advised Bassett that Iafrate was not returning to the site; he merely stated that he did not know when he would

return. Iafrate did in fact return to the jobsite on May 6, 7 and 8, 2002, and again on June 5 and 6, 2002. In addition, Bolin testified that he took the machine with him every time he left the project. (Bolin Dep. 20:7, Aug. 17, 2005.) Based upon the testimony of Bassett and Bolin, the Court finds that Iafrate did not abandon the project on April 18, 2002, and was therefore not in default on April 18, 2002. The contract required Bond Paving to make payments to Iafrate within ten days of receipt of payment from MDOT. This requirement was not conditioned upon Iafrate providing a plan or assurances concerning completion of the contract. For this reason, the Court finds that Bond Paving breached the subcontract by failing to pay Iafrate in accordance with the terms of the contract on April 21, 2002, and May 30, 2002. Bond Paving's breach was material because Bond Paving's duty to pay Iafrate for its work was an essential term of the subcontract. Because Bond Paving's breach was material, Iafrate was excused from performance of its obligations under the subcontract.

*To What Damages is Iafrate Entitled?*

Iafrate seeks damages for the work that it performed "under the theory of '**restitution** interest."' (Pl.'s Reply to Def.'s Bench Br. on Damages, p. 3, dated Oct. 20, 2005.) Specifically, Iafrate contends that it is entitled to payment in the amount of $144,072.91 for work completed between February 22, 2002, and April 24, 2002, plus a retainage in the amount of $3,279.55, for a total amount of $147,352.46.[1]

Bond Paving, on the other hand, contends that the correct measure of damages for Iafrate is as follows:

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach,

---

[1] Iafrate also seeks penalties, interest, and attorney's fees, which is discussed below.

less

(c) any cost or other loss that he has avoided by not having to perform.

(Def.'s Bench Memo., p. 3, *quoting* Restatement (Second) of Contracts § 347 (2005)).  Bond Paving contends that Iafrate only completed 11,413.66 square yards[2] of grinding, which at $9.85 per square yard, would entitle Iafrate to a payment of $112,424.55 for the work it performed.  However, Bond Paving contends that additional adjustments must be considered, such as the cost avoided by Iafrate by not having to complete the contract.  According to Bond Paving, the savings to Iafrate by not completing the contract was $78,678.89.[3]  Therefore, Bond Paving contends that the total damages recoverable by Iafrate is $33,745.66.[4]

The standard for measuring contract damages under Mississippi law is as follows:

The court's purpose in establishing a measure of damages for breach of contract is to put the injured party in the position where she would have been but for the breach. Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.

*Frierson v. Delta Outdoor, Inc.*, 794 So.2d 220, 225 (Miss. 2001), *quoting Theobald v. Nosser,* 752 So.2d 1036, 1042 (Miss.1999) (other citations omitted).  In this case, if the Court were to allow

---

[2]According to Bond Paving, although Iafrate may have ground 15,513.66 square yards, MDOT required 4100 square yards to be re-done.  Bond Paving produced a copy of a letter from MDOT dated October 14, 2002, stating that although 15,560.31 square yards appeared on the estimate, only 11,413.66 square yards were completed and accepted by MDOT.  Bond Paving paid Highway Services to perform the re-grinding of the 4,100 square yards.

[3]Bond Paving contends that the cost to complete the project was $1,033,488.26.  The subcontract price between Iafrate and Bond Paving was $954,769.37 (96,930.90 square yards completed at $9.85 per square yard.)  The difference between the cost to complete and the subcontract price is $78,678.89, the savings from avoided expenditures.

[4]The total damages recoverable is calculated by deducting the savings from avoided expenditures from the earned progress payments owed Iafrate, in the amount of $112,424.55.

Iafrate to recover its restitution interest, in the amount of $147,352.46, Iafrate would be in a better position that it would have been had the contract been performed. Clearly, Mississippi law does not allow the plaintiff to recover more than what he would have received had the contract been performed. When the non-breaching party seeks a monetary remedy, "that remedy must be such that the breaching party is not charged beyond the trouble his default caused." *Frierson*, 794 So.2d at 225, *citing Wall v. Swilley,* 562 So.2d 1252, 1256 (Miss.1990). In addition, the non-breaching party has a duty to mitigate. *Wall*, 562 So.2d at 1256; *see also Byrd Bros., LLC v. Herring*, 861 So.2d 1070, 1074 (Miss. Ct. App. 2003). Moreover, "damages may only be recovered when the evidence presented at trial 'removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty.'" *Wall*, at 1256.

In this case, the parties proceeded beyond May 30, 2002, the date the second payment was due, as though the contract had not been breached. As early as June 6, 2002, Iafrate informed Bond Paving that it would hire a subcontractor to complete the grinding on the project. Iafrate did not demand payment from Bond Paving until September 12, 2002. In that letter, Iafrate informed Bond Paving that Bond Paving was in default for non-payment, and that Iafrate would not return to the project. Until that time, Iafrate intended to hire a subcontractor to complete the project, and continued to assure Bond Paving that it would do so. Eventually, in October 2002, Bond Paving terminated the contract and hired Highway Services in December 2002 to complete the project. Based upon these facts, the undersigned finds that to appropriately measure damages in this case, the Court must take into consideration the cost avoided by Iafrate in not performing the contract. In so doing, the Court will not charge Bond Paving beyond the "trouble [its] default caused." *Frierson*, at 225; *see also Byrd Bros., LLC v. Herring*, 861 So.2d 1070, 1074 (Miss. Ct. App. 2003).

By letter dated October 14, 2002, MDOT advised Bond Paving that only 11,413.66 square

yards were completed and accepted, and that 4,100 square yards would have to be re-done. (Def.'s Ex. 20.) Because MDOT required 4100 square yards to be re-done, Iafrate is not entitled to payment for that work. Iafrate is entitled to damages based upon 11,413.66 square yards at the contracted price of $9.85 per square yard, for a total amount of $112,424.55. From this figure the Court will deduct that amount of costs avoided in not completing the contract. The cost to complete the contract (the amount Bond Paving paid Highway Services) was $1,033,448.26. The subcontract price, had the parties performed as contracted, would have been $954,769.37 (96,930.90 square yards at $9.85 per square yard). The cost avoided by Iafrate in not performing the contract is calculated by subtracting the subcontract price, $954,769.37, from the cost to complete the contract, $1,033.448.26, which is $78,678.89. The cost avoided, $78,678.89, must be subtracted from the amount of work performed by Iafrate on the project, $112,424.55, to determine the total amount of damages recoverable by Iafrate, which is $33,745.66. Therefore, the Court finds that Iafrate is entitled to recover $33,745.66 from Bond Paving and R.L.I.

*Is Iafrate Entitled to the Fifteen Percent Penalty as Provided in MISS. CODE ANN. § 31-5-27 and Attorney Fees Pursuant to MISS. CODE ANN. § 31-5-57?*

As noted above, Iafrate contends that it is entitled to penalties for Bond Paving's failure to timely pay Iafrate for the work performed under the subcontract, and to attorney fees pursuant to MISS. CODE ANN. § 31-5-57. MISS. CODE ANN. § 31-5-27 provides in pertinent part as follows:

> If the contractor without reasonable cause fails to make any payment to his subcontractors . . . within fifteen (15) days after the receipt of payment under the public construction contract, the contractor shall pay to his subcontractors . . ., in addition to the payment due them, a penalty in the amount of one-half of one percent (1/2 of 1%) per day of the delinquency, calculated from the expiration of the 15-day period until fully paid. The total penalty shall not exceed fifteen percent (15%) of the outstanding balance due.

MISS. CODE ANN. § 31-5-27. It is undisputed that Bond Paving failed to make payments to Iafrate within fifteen days of receipt of payment from MDOT. In fact, Bond Paving has to date failed to

make any payment to Iafrate for work performed under the subcontract. Jeff Bassett, a former employee of Bond Paving, testified that Bond Paving has not disputed that it owed Iafrate for its work on the project, but that it was justified in withholding payment because Iafrate did not provide assurances that it would complete the project. Of course, in the end, Iafrate did not in fact complete the project. However, Iafrate provided Bond Paving a performance bond on or about May 30, 2002, and informed Bond Paving as early as June 6, 2002, that it intended to hire a subcontractor to complete the project. Moreover, the subcontract clearly stated that Bond Paving agreed to make payment within ten days from the time that Bond Paving was paid by MDOT. Further, MISS. CODE ANN. § 31-5-27 required that such payments be made with fifteen days of receipt of payment from MDOT. The payment by Bond Paving for the work performed by Iafrate was not conditioned upon assurances from Iafrate concerning the completion of the project. For these reasons, the Court finds that the failure of Bond Paving to pay Iafrate was without reasonable cause. Iafrate is therefore entitled to the penalty provided in MISS. CODE ANN. § 31-5-27, in the amount of $5,061.85, and to attorney fees pursuant to MISS. CODE ANN. § 31-5-57.

*Is Iafrate Entitled to Prejudgment Interest?*

Iafrate contends that it is entitled to prejudgment interest at the rate of eight percent as provided in MISS. CODE ANN. 75-17-1. The law in Mississippi regarding prejudgment interest is well established that "where there is no provision in the parties' contract concerning payment of interest," "an award [of prejudgment interest] is discretionary with the trial judge but is available only if the money due was liquidated and there was no legitimate dispute that the money was owed." *Tupelo Redev. Agency v. Abernathy*, 913 So.2d 278, 286 (Miss. 2005) (citation omitted). However, "[n]o award of prejudgment interest may rationally be made where the principal amount has not been fixed prior to judgment." *Abernathy*, 913 So.2d at 286, *citing Coho Res., Inc. v. McCarthy*,

829 So.2d 1, 20 (Miss. 2002) (other citation omitted).

In this case, the contract did not include a provision concerning the payment of interest. Thus, the Court may award prejudgment interest if the money due was liquidated, and there was no legitimate dispute that the money was owed. If the principal amount is not fixed prior to judgment, the Court may not award prejudgment interest. As of May 30, 2002, there was no legitimate dispute that the money was owed;[5] however, the principal amount owed to Iafrate was not fixed prior to judgment. For this reason, Iafrate is not entitled to an award of prejudgment interest.

*Is Iafrate Entitled to Punitive Damages?*

Iafrate contends that it is entitled to punitive damages based upon "Bond Paving's intentional and willful refusal to pay, coupled with Bond Paving's falsification of certification of payments to MDOT." (Pl.'s Prop. Findings of Fact & Conclusions of Law, p. 7.) "Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Hurst v. Southwest Miss. Legal Serv. Corp.*, 708 So.2d 1347, 1350 (Miss. 1998). For the Plaintiff to recover punitive damages in a breach of contract claim, "the plaintiff must prove by a preponderance of the evidence that the defendant 'acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others.'" *Hurst*, 708 So.2d at 1350, *citing Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 293 (Miss. 1992). Such damages are "recoverable 'only in extreme cases.'" *Snow Lake Shores Prop. Owners Corp. v. Smith*, 610 So.2d 357, 362 (Miss. 1992) (citations omitted).

In this case, Bond Paving failed to pay Iafrate according to the terms of the contract for work

---

[5]As noted above, Jeff Bassett testified that Bond Paving never disputed that it owed Iafrate for the work it performed.

performed by Iafrate between February 22, 2002, and April 24, 2002.  However, after May 30, 2002, the date that the second payment was due but not paid, the parties proceeded as though no breach had occurred until September 12, 2002, when Iafrate demanded payment from Bond Paving.  There is no evidence that Iafrate demanded payment from Bond Paving prior to September 12, 2002.  As early as June 6, 2002, Iafrate had assured Bond Paving that it would hire a subcontractor to complete the project.  As of September 12, 2002, when Iafrate demanded payment, Iafrate had not hired a subcontractor.  Based upon these facts, the Court is of the opinion that Iafrate has failed to show by a preponderance of the evidence that Bond Paving acted with malice, gross negligence or reckless disregard in failing to pay Iafrate.  Iafrate has provided no evidence which would support a finding of malice, gross negligence or reckless disregard.  As noted above, the only evidence provided in support of this claim is Bassett's testimony that Bond Paving never disputed owing money to Iafrate and Bond Paving's certifications to MDOT regarding payment to subcontractors.  This is simply insufficient to support an award of punitive damages.

BOND PAVING'S CLAIMS AGAINST IAFRATE:

Bond Paving asserted claims of breach of subcontract and bad faith breach of subcontract against Iafrate, and claims of breach of performance bond and bad faith breach of performance bond against Continental Insurance Company.  Bond Paving contends that it is entitled to damages for Iafrate's failure to complete the project, and to punitive damages for Iafrate's and Continental's "willful, malicious, reckless, and intentional misconduct and gross negligence." (Pretrial Order, p. 3, filed Aug. 25, 2005.)  Under Mississippi law, "a party who has breached a contract may not . . . maintain a suit for breach of the contract against the other party." *Smith*, 610 So.2d at 361-62 (Miss. 1992) (citations omitted).  Because Bond Paving breached the contract by failing to pay Iafrate according to the terms of the contract, Bond Paving cannot maintain its claims for breach of contract

against Iafrate and Continental. These claims must therefore be dismissed with prejudice.

CONCLUSION

It is the opinion of the Court that the Plaintiff has established that Bond Paving materially breached the subcontract by failing to make payments to the Plaintiff according to the provisions of the subcontract. In addition, the Plaintiff has established that it is entitled to damages in the amount of $33,745.66, plus a penalty pursuant to MISS. CODE ANN. § 31-5-27, in the amount of $5,061.85, and attorney fees pursuant to MISS. CODE ANN. § 31-5-57. The Defendant has failed to establish its claims against the Counter-Defendants; therefore, the Defendant's claims must be dismissed with prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that for the reasons stated herein, the Plaintiff is entitled to recover from Defendants damages in the amount of $33,745.66, plus a penalty pursuant to MISS. CODE ANN. § 31-5-27, in the amount of $5,061.85, and attorney fees pursuant to MISS. CODE ANN. § 31-5-57.

**IT IS FURTHER ORDERED AND ADJUDGED**, that for the reasons stated herein, the Defendant's claims against the Plaintiff, Angelo Iafrate Construction, L.L.C., and its surety, Defendant Continental Insurance Company, should be and are hereby **DISMISSED WITH PREJUDICE.** The Court shall enter a separate judgment pursuant to FED. R. CIV. P. 58.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2006.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE